**AFFIRM as MODIFIED; and Opinion Filed August 14, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00728-CR**

**DEBORAH A. PETERSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 30352-86**

**MEMORANDUM OPINION**
Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice Lewis

A jury found appellant Deborah Peterson guilty of possession of methamphetamine with intent to deliver in an amount of four grams or more but less than 200 grams, within 1000 feet of a drug free zone. The jury assessed appellant's punishment at seventy years' confinement and a fine of $20,000. Appellant raises sixteen issues on appeal. We modify the judgment to delete the order for the sentences to run consecutively. As modified, we affirm the trial court's judgment. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4.

Kaufman County narcotics investigators received information from a confidential informant ("CI") that appellant was selling drugs from a house that she rented in Terrell, Texas. After obtaining a "no-knock search warrant" for appellant's residence, a SWAT team entered the home, searched and found illegal drugs, and arrested appellant.

Appellant filed several pre-trial motions including motions to suppress evidence found during the search as well as suppression of her statements which led to the location of the illegal drugs. These motions to suppress were denied. During the punishment phase, the State introduced penitentiary packets for drug possession from Hunt County from December 2008, and Van Zandt County from January 2009 for which appellant was sentenced to concurrent sentences of confinement. The State further introduced records for two other drug possession offenses, including a deferred adjudication order, conditions of community supervision, motion for adjudication, a capias, and a plea of true. Appellant was found guilty and sentenced to seventy years' confinement and a fine of $20,000.

### *Consecutive sentence order*

Appellant's first ten issues contend the trial court erred by ordering her sentences to run consecutively pursuant to Texas Health and Safety Code, section 481.134 because all of her prior convictions were for offenses listed under section 481.134 and not convictions "under any other criminal statute." *See Williams v. State*, 253 S.W.3d 673, 678 (Tex. Crim. App. 2008). The State concedes this issue.

We have the authority to modify an incorrect judgment when we have the necessary data and information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). "Punishment that is increased for a conviction for an offense listed under this section may not run concurrently with punishment for a conviction under any other criminal statute." TEX. HEALTH & SAFETY CODE ANN. § 481.134 (West 2010). Here, the record shows the jury decided the guilt of appellant under section 481.134 and appellant's prior felony convictions were also offenses listed under section 481.134 and not "under any *other* criminal statute." *Id.*

(emphasis added). We sustain appellant's first ten issues.[1] We modify the trial court's judgment to delete the order for the sentences to run consecutively.

### Drug-free zone enhancement

Appellant's eleventh and twelfth issues argue that the evidence was insufficient.[2] Appellant argues the evidence was insufficient to establish that she committed the offense in a drug-free zone and because the evidence was insufficient, the trial court erred in failing to instruct the jury that the maximum fine was $10,000. Specifically, appellant argues the "school" option in a drug-free zone finding was unavailable because members of the "general public could not enroll their children" in the relevant school.

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the drug-free zone enhancement beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). It is the responsibility of the jury to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure the sufficiency of the evidence to support the drug-free zone finding by the elements of the enhancement as defined by a hypothetically correct jury charge. *Young v. State*, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d

---

[1] Because we have concluded the cumulation order shall be deleted, we do not address appellant's issues regarding pronouncement of the order or her right to be present when the order was entered.

[2] Appellant does not, however, challenge the sufficiency of the evidence to support possession with intent to deliver.

234, 240 (Tex. Crim. App. 1997). "[I]f the penal offense sets out various statutory alternatives for the distinct elements of the crime, the jury charge may contain only those alternative elements that are actually alleged in the indictment." *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011). Thus, a hypothetically correct jury charge must include allegations that are statutory alternatives for an element of the offense and material variances. *See id*.

The State alleged "the defendant committed the above offense within 1,000 feet of, the premises owned or rented or leased by a school, institution of higher learning, or playground, or a public or private youth center." The statute under which appellant was charged states, "The minimum term of confinement or imprisonment for an offense otherwise punishable" under section 481.112(d) is increased by five years and the maximum fine for the offense is doubled if it is shown on the trial of the offense "that the offense was committed in, on, or within 1,000 feet of the premises of a school, the premises of a public or private youth center, or a playground." TEX. HEALTH & SAFETY CODE ANN. § 481.134(c)(1) (West Supp. 2012).

The trial court's charge to the jury gave the following instructions which track the definitions provided in the statute:

> "Premises" means real property and all buildings and appurtenances pertaining to the real property.
>
> "School" means a private or public elementary or secondary school.
>
> "Playground" means any outdoor facility that is not on the premises of a school and that is intended for recreation, is open to the public, and contains three or more play stations intended for the recreation of children, such as slides, swing sets, and teeterboards.
>
> "Youth center" means any recreational facility or gymnasium that is intended primarily for use by persons who are 17 years of age or younger and regularly provides athletic, civic, or cultural activities.
>
> The indictment alleges that defendant committed the offense alleged in the indictment within 1000 feet of the premises of a school, or playground, or a public or private youth center.

–4–

Do you, the Jury, find beyond a reasonable doubt that the defendant committed the offense of possession of a controlled substance, with intent to deliver, within 1000 feet of the premises of a school, or playground, or a public or private youth center.

Because the State must prove the offense occurred within 1,000 feet of the "premises" of a "school," or "playground," or a "public or private youth center" for the evidence to be legally sufficient, we must define "premises," "school," or "playground," or a "public or private youth center" before reviewing the evidence. When construing a statute, we give effect to the plain meaning of the text where possible. *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011).

Appellant argues the Terrell State Hospital Child and Adolescent School operated on the hospital's 140-acre tract was not a "school" within the meaning of the statute because members of the "general public could not enroll their children" in the school." The statute defines a "school" as a private or public elementary or secondary school. TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(5) (West Supp. 2012). The statutory definition of "school" does not depend on the school's enrollment being open to the general public. The statute allows for a school to be private, which by definition is not open to the public. Other courts have found a private home can constitute a "school" if children are taught there in a bona fide manner. *See White v. State*, 59 S.W.3d 368, 370 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) *overruled on other grounds by Tottenham v. State*, 59 S.W.3d 368 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see also Young*, 14 S.W.3d at 754 ("the name of the premises alone may be sufficient to raise a presumption that it is a private or public elementary or secondary school."). We note that appellant does not provide this Court with any cases that have reversed a drug-free zone finding based on the definition of a "school."

Appellant further argues the "premises" of the school could not have included the entire 140-acre tract of real property owned by Terrell State Hospital because the premises of the school should be "restricted to the real property where the school building stood, plus the building and its appurtenances." However, the statute defines "premises" as "real property and all buildings and appurtenances pertaining to the real property." TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(4) (West Supp. 2012). Because the school building is located on the 140-acre tract of real property owned by Terrell State Hospital and not a divided area, we conclude the plain meaning of "premises" in this case includes the entire 140-acre tract of land.

Therefore, the plain language of the statute makes apparent that a person need only deliver a controlled substance within 1,000 feet of a school (or its premises) to have committed the offense in a drug-free zone. Here, the State provided testimony by Steve Rogers, the City Engineer for the City of Terrell, as well as a map of the city limits of Terrell with marked drug-free zones. Rogers testified it is part of his job duties to maintain a map of the city with drug-free zones and Terrell State Hospital fell within the definition of a drug-free zone because it contained a school within the meaning of the statute. Rogers also testified the house where appellant was arrested was within 280 feet of the 1,000 foot perimeter of the relevant drug-free zone. The State also presented testimony by Kaufman County criminal investigator Genevieve Balliette who reported the school on the Terrell State Hospital campus was run by the Terrell Independent School District. Rogers' and Balliette's uncontradicted testimony constituted evidence from which the jury could reasonably conclude that the "school" on the "premises" of Terrell State Hospital was a "school" pursuant to section 481.134. TEX. HEALTH & SAFETY CODE ANN. § 481.134. Thus, a rational jury could have so found beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318–19. Accordingly, we conclude the evidence is legally and factually sufficient to support the jury's finding on the special issue in dispute. *Id*. Because we conclude

the evidence sufficient to support the jury's finding of a drug-free zone, we do not address appellant's twelfth issue regarding the jury instruction limiting the maximum fine. Appellant's eleventh and twelfth issues are decided against her.[3]

*Validity of Search Warrant*

In her thirteenth issue, appellant contends the trial court erred by refusing to suppress the evidence because the search warrant for her house was invalid due to insufficient information concerning the informant's timing. Specifically, appellant contends the search warrant was invalid due to the lack of probable cause at the time of execution because the information in the supporting affidavit was "stale." As to the supporting affidavit, appellant complains the statement that the CI "had been" inside appellant's house "precluded reasonable inferences that the information provided by the CI was not stale." The State responds that the affidavit was sufficient because it showed an ongoing drug enterprise in the house.

When reviewing a magistrate's determination to issue a search warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant. *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012); *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). We look only to the four corners of the supporting affidavit in a "commonsensical and realistic manner" and we must uphold the magistrate's decision so long as the magistrate had a substantial basis for concluding that probable cause existed. *Jones,* 364 S.W.3d at 857; s*ee also Illinois v. Gates*, 462 U.S. 213 (1983); *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011).

"We are instructed not to analyze the affidavit [in support of a search warrant] in a hyper-technical manner." *McLain*, 337 S.W.3d at 271. There is no requirement that "each and every

---

[3] Because we conclude the jury could have concluded appellant committed her offense within 1,000 feet of the premises of a "school," we do not address the possibility of a finding regarding a "playground" or "public or private youth center."

fact which contributed to [the affiant's] conclusions be spelled out in the complaint." *See Gates*, 462 U.S. at 230 n.6. The affidavit must disclose facts for the magistrate to ascertain that the items to be seized will be on the described premises at the time the warrant issues and the search is executed. *See Crider v. State*, 352 S.W.3d 704, 707 (Tex. Crim. App. 2011).

Appellant complains the affidavit is vague in describing *when* the CI was inside appellant's house and had seen the appellant selling drugs; thus, the information provided by the informant was "stale." The affidavit supporting the search warrant, in relevant part, reads as follows:

> 4. Affiant has probable cause for said belief by reason of the following facts and circumstances:
>
> Your Affiant Robert Keith Ramsey has been a Texas Peace Officer for more than ten years; Affiant is currently employed by the Kaufman County Sheriff's Office assigned to Narcotics.
>
> During the past forty eight hours Affiant has met with a confidential informant (ci). The ci stated that the ci had been at 503 State Street in the city of Terrell, Kaufman County Texas. The ci stated while at the residence the ci met with the following people, Deborah Carver, Crystal Jordan and Brandon Hall.
>
> The ci stated that Deborah Carver had over two ounces of Crystal methamphetamines ready for distribution through out the city of Terrell and Kaufman County. The ci stated that [Deborah Carver's] son Carl Caver had went to Jail and she was selling the drugs to raise Bond money for her son.
>
> After speaking with the ci about the drug information Affiant checked the Kaufman County Jail Data Base and located Carl Caver in the Kaufman County Jail with a twenty thousand dollar bond.
>
> Affiant then checked the water bill for the suspect residence and it came back to Deborah Ann Peterson with a Texas driver license number 334[*****]. Affiant then checked the Criminal history of Deborah Ann Peterson and it showed a total of eight arrest and 13 aka names. Peterson showed to have four conviction[s] they are for the following offenses[:]
>
> Assault, poss. of over 1 gram under 4 grams, poss. over 1 gram under 4 grams, Carrying prohibited weapon.
>
> Affiant also knows Crystal Jordan and has purchased crystal methamphetamine from her in the past using a confidential informant. Affiant has also had

information from speaking to people in the jail that Brandon Hall was dealing large quantity of crystal methamphetamine in the city of Terrell and in Kaufman County.

Affiant has used this ci to purchase narcotics in the past and this ci has been forthcoming with information to your Affiant and Affiant has found the information to be truthful.

Affiant believes this ci and believes that there is crystal methamphetamine located at 503 east state street in the City of Terrell ready for distribution through out the city and the county.

The affidavit in this case is very clear that the officer spoke to the informant within forty-eight hours of filing the affidavit. While the affidavit did not speak to the exact date and time the informant learned of the situation, the information that appellant's son was currently in jail on bond was verified by the affiant. These facts along with affiant's previous interactions with the informant, appellant's past criminal endeavors, and the criminal history of the other two residents of the premises allow reasonable inferences that there was a fair probability of finding methamphetamine at appellant's home at the time of the issuance of the warrant. *See McLain*, 337 S.W.3d at 272–74. We conclude the affidavit was sufficient to allow the magistrate to have independently determined probable cause existed. Appellant's thirteenth issue is decided against her.

### *Admission of Statements*

Appellant's fourteenth, fifteenth, and sixteenth issues are based on statements she made while in custody. Appellant complains the statements were inadmissible under *Miranda*; the trial court erred by failing to instruct the jury to disregard the statements if they determined that appellant was not timely given her *Miranda* rights; and the statements were inadmissible because they were not recorded. The State responds that appellant was read her *Miranda* rights and the unrecorded statements were admissible under the Texas Code of Criminal Procedure. Appellant contends that her statements were inadmissible because Ramsey failed to inform her of her rights

prior to asking about the location of the methamphetamines and he failed to record any of her statements. Appellant filed a pre-trial motion to suppress her statement and objected again at trial. The trial court denied her motion to suppress and admitted the statement.

We review a motion to suppress using a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Rice v. State*, 195 S.W.3d 876, 882 (Tex. App.—Dallas 2006, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). In determining whether the trial court's ruling on a motion to suppress is supported by the record, we generally consider only the evidence adduced at the hearing on the motion. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). "However, this general rule is inapplicable where, as in this case, the suppression issue has been consensually re-litigated by the parties during trial on the merits." *Id*. Therefore, we may properly consider trial testimony in our review of the trial court's suppression determination.

Ramsey testified a SWAT team entered and secured the residence. Ramsey testified that the three people present in the house were all detained upon entrance by the SWAT team. It is undisputed that appellant was deprived of her freedom and not free to leave when Ramsey entered the house. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Ramsey asked appellant if there were any "illegal controlled substances in the residence, cause [he] didn't want to tear the residence up." He further inquired about large sums of cash. Appellant informed Ramsey that she had an estimated quarter ounce of crystal methamphetamines and three or four thousand dollars in cash in her black purse placed on her bed in her bedroom. Ramsey proceeded to search the bedroom and found a black purse containing methamphetamines and cash just as appellant reported. After the search, appellant made further statements to Ramsey during her ride to the

–10–

county jail. Appellant told Ramsey that she sold two ounces per day and had to supplement her income by selling methamphetamine in her home because she "only received $600 per month in Social Security payments."

The record reflects a discrepancy on the actual time that appellant was read her *Miranda* rights. Ramsey testified he read appellant her rights when he entered the residence. However, Ramsey also acknowledged his report, written the day after appellant's arrest, reflects he read her the *Miranda* rights after appellant told him where to find the methamphetamines and cash.

Appellant argues admission of her statements violated her rights under section three of article 38.22 of the code of criminal procedure and the rule in *Miranda*, 384 U.S. at 479. We note that the warnings required by the statute are virtually identical to the warnings required by *Miranda*. *See Herrera v. State*, 241 S.W.3d 520, 529 (Tex. Crim. App. 2007).

The trial court was faced with a conflict between what Ramsey remembered and what he wrote in his report. There is no contradictory evidence in the record, from the pre-trial hearing or trial testimony, purporting Ramsey *failed* to read appellant her *Miranda* rights. We find no other testimony regarding *when* appellant was read her rights. The trial court resolved the conflict in favor of admitting the statements. Because we "almost wholly" defer to the trial court on questions of historical fact and credibility, we cannot conclude the trial court erred by admitting appellant's statements. *See Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011).

Article 38.22 provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless an electronic recording is made of the statement and, prior to the statement but during the recording, the accused is given the warnings in Section 2(a) and the accused knowingly, intelligently, and voluntarily waives the rights set out in the warning. TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(a) (West 2005). The appellant must be warned of the following rights under Section 2(a):

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
(2) any statement he makes may be used as evidence against him in court;
(3) he has the right to have a lawyer present to advise him prior to and during any questioning;
(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
(5) he has the right to terminate the interview at any time.

*Id*. "Strict compliance with all portions of Section 3(a) is required." *Woods v. State*, 152 S.W.3d 105, 116 (Tex. Crim. App. 2004) (en banc).

The State concedes on appeal that the record reflects a discrepancy as to whether the statement was taken in compliance with article 38.22 section 3(a). The State argues that appellant's unrecorded statements were admissible as an exception under article 38.22, section 3(c), which provides:

 (c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

TEX. CODE CRIM. PROC. ANN. art. 38.22 § 3(c). Even if appellant was not given her rights until after she told Ramsey the location of the methamphetamines, her oral statements contain assertions of fact unknown by law enforcement at the time they were made but later found to be true and conducive to establishing appellant's guilt. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22; *Woods*, 152 S.W.3d at 117; s*ee also Casas v. State*, 462 S.W.2d 581, 582 (Tex. Crim. App. 1970) (Upon presentation of search warrant and prior to being read his *Miranda* rights, appellant stated, "Well here it is" and handed officers marihuana.). Under these circumstances, we cannot conclude the trial court erred in admitting the statements.

Lastly, appellant complains the trial court erred by refusing to give an article 38.23 instruction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005) (requiring a jury instruction to disregard evidence if they find it was obtained in violation of any law).

Specifically, appellant argues there was a fact issue for the jury to decide regarding the discrepancy in Ramsey's testimony about the time appellant was read her *Miranda* rights thus, triggering an article 38.23(a) instruction. The trial court refused the instruction.

We review claims of jury charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Error in failing to include a 38.23 instruction is charge error subject to an *Almanza* harm analysis. *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996) *overruled on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002). We reverse for properly preserved charge error only if there is "some harm" to appellant. *Almanza*, 686 S.W.2d at 171. To determine the actual degree of harm, we examine (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the argument of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Id*.

To be entitled to an article 38.23(a) instruction, appellant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact was material to the constitutional or statutory violation that the appellant identified as rendering the particular evidence inadmissible. *See Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2012). The material issue of fact must raise a "factual dispute about how the evidence was obtained." *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (quoting *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)). Where the issue raised by the evidence at trial does not involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court. *Robinson*, 377 S.W.3d at 719.

In this case Ramsey's written report and his recollection were not exactly the same; however, they were not necessarily contradictory either. *See Garza*, 126 S.W.3d at 87

(explaining that neither "mere insinuations by appellant's attorney" that police acted improperly nor defense cross-examination of police officers who consistently denied suggestion of impropriety created fact issue that police acted improperly); *Rose v. State*, 470 S.W.2d 198, 200 (Tex.Crim.App.1971) ("No witness was called by the appellant to controvert the testimony of the officers. The cross-examination did not raise a fact issue on the right to arrest. Therefore, the court did not err in refusing the [article 38.23] charge."). It is possible that Ramsey read appellant her *Miranda* rights upon entrance into the house and again when placing her under arrest and into the police vehicle.

Assuming without deciding a material fact issue did exist and the 38.23 jury instruction should have been included in the charge, we cannot find that appellant was harmed by the omission. After appellant was placed in the vehicle for transport to the jail, she told Ramsey she had lived at the residence for four months and sold one to two ounces of methamphetamine per day to several people, she only received $600 per month from Social Security income, and she needed to supplement her income by selling the methamphetamines. The State further introduced seventeen of appellant's phone conversations from the jail where she told her son that she had sold three quarter-ounces of methamphetamine the morning of the arrest, and she had a black tablet with a list of people who owed her money. Based on the evidence, the contested issues, the weight of the probative evidence, and the arguments of counsel, we conclude that appellant was not harmed by any error in the court's omission of the 38.23 instruction.

Appellant's fourteenth, fifteenth, and sixteenth issues are decided against her.

In conclusion, we modify the trial court's judgment to delete the order for the sentences to run consecutively and we affirm the trial court's judgment as modified.

/David Lewis/
DAVID LEWIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120728F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DEBORAH A. PETERSON, Appellant

No. 05-12-00728-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District
Court, Kaufman County, Texas
Trial Court Cause No. 30352-86.
Opinion delivered by Justice Lewis.
Justices FitzGerald and Francis participating.


Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We delete the order for the sentences to run consecutively.

As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered this 14th day of August, 2013.


/David Lewis/

DAVID LEWIS
JUSTICE